**IT IS ORDERED as set forth below:**

**Date: March 31, 2023**

_____

**Jeffery W. Cavender**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 22-50369-JWC |
| PARKER MEDICAL HOLDING COMPANY, INC., *et al*., | CHAPTER 11 |
| | JOINTLY ADMINISTERED |
| Debtors. | |
| FIRST-CITIZENS BANK & TRUST COMPANY, | |
| Plaintiff/Counterclaim Defendant, | |
| v. | |
| PARKER MEDICAL HOLDING COMPANY, INC.; MIDWEST MEDICAL ASSOCIATES, INC.; and RICHARD L. PARKER, SR., | ADV. PRO. NO. 22-05010-JWC |
| Defendants/Counterclaim Plaintiffs, | |
| and | |
| PEACHTREE MEDICAL PRODUCTS, LLC; MIDWEST MEDICAL DME ENTERPRISES, LLC; and MIDWEST MEDICAL ENTERPRISES, LLC, | |
| Defendants. | |

1

## MEMORANDUM OPINION

Before the Court are three Motions:

1. *Non-Debtor Defendants'/Counterclaimant's Motion for: (1) Entry of an Order Holding that Non-Debtor Defendants/Counterclaimant Are Entitled to a Jury Trial on Counterclaims and Affirmative Defenses Pursuant to 28 U.S.C. § 157 and BLR 9015-1; (2) Entry of Order Holding that Non-Debtor Defendants'/Counterclaimant's Affirmative Defenses are Non-Core Under 28 U.S.C. § 157(B)(3); and (3) Entry of Order of Report and Recommendation to District Court for Withdrawal of the Reference Pursuant to 28 U.S.C. § 157(d)* (Doc. No. 15) (the "Jurisdictional Motion");

2. *First-Citizens Bank & Trust Company's Motion for Summary Judgment* (Doc. No. 21) (the "Motion for Summary Judgment"); and

3. *Non-Debtor Defendants'/Counterclaimant's Motion for: (1) Entry of an Order Under Rule 56(d) for Additional Time to Conduct Discovery; and (2) to Defer or Abstain from Ruling on Motion for Summary Judgment Until After Entering Order on Non-Debtor Defendants'/Counterclaimant's Threshold Jurisdictional Motion and Citation of Authority in Support* (Doc. No. 31) (the "Motion to Defer").

The Court addresses the motions below, but first sets out preliminary background and addresses some preliminary issues.

## I.   Background and Preliminary Matters

Richard L. Parker, Sr. ("Mr. Parker") has been in the business of selling medical products for many years.  He ran his business through a variety of corporate entities, including each of the corporate Defendants named in this adversary proceeding, which he owns either directly or indirectly.  Around 2018, the Defendants began a banking relationship with First-Citizens Bank & Trust Company ("First Citizens").  The relationship soured in the Spring of 2021 and led to this litigation, which started as a state court complaint filed by First Citizens asserting straightforward breach of contract claims against the Defendants.

The primary claims at issue arise under a promissory note called the "973 Note."  First Citizens loaned upwards of $3 million to Parker Medical Holding Company, Inc. ("Parker

Medical") under the 973 Note.  First Citizens alleges the 973 Note matured on May 25, 2021, Parker Medical defaulted by failing to pay the outstanding balance in full upon maturity, and it is owed more than $3.5 million in principal, interest, and various fees, including attorneys' fees.  First Citizens further alleges the default on the 973 Note triggered a cross-default on a second note, the "063 Note," signed by Parker Medical and Defendant Peachtree Medical Products, LLC ("Peachtree Medical").  First Citizens claims it is owed more than $120,000 on the 063 Note in principal, interest, and fees.  Each of the other Defendants guaranteed one or both of the 973 and 063 Notes.  First Citizens asserts breach of contract claims against each Defendant for their respective obligations under the notes or guarantees.  First Citizens also asserts separate claims for attorneys' fees against each Defendant.

Three of the Defendants, Parker Medical; Midwest Medical Associates, Inc. ("Midwest Medical"); and Mr. Parker, individually, answered in the state court asserting various affirmative defenses and several counterclaims.  Parker Medical, Midwest Medical, and Mr. Parker are the "Counterclaim Defendants."  Their counterclaims and defenses all revolve around their position that First Citizens either agreed, or misrepresented, that it would extend the maturity date of the 973 Note to September of 2021, but then failed to do so, which caused damage to the Defendants' businesses and Mr. Parker's ownership interest in the Defendants.   All three Counterclaim Defendants asserted the same counterclaims for 1) breach of contract, 2) mutual departure from the 973 Note loan documents, and 3) negligent or intentional misrepresentation.  The Counterclaim Defendants assert damages of at least $10 million.  Mr. Parker filed a fourth counterclaim unique and personal to him for alleged damage to the value of his ownership interests in the other Defendants, which, like the other three counterclaims, depends on the alleged agreement to extend the maturity of the 973 Note followed by a breach of that agreement.  Each of the Counterclaim

3

Defendants also asserted affirmative defenses for failure to state a claim, offset, novation, mutual departure, failure to mitigate, impairment of collateral, excuse due to conduct of First Citizens, failure of consideration, frustration of purpose, impossibility of performance, waiver, unclean hands, equitable estoppel, and estoppel.

The remaining Defendants, i.e., Midwest Medical DME Enterprises, LLC ("DME"); Midwest Medical Enterprises, LLC ("Enterprises"); and Peachtree Medical, also answered in the state court and asserted the same affirmative defenses. DME, Enterprises, and Peachtree Medical, however, did not assert any counterclaims.

While the state court case was pending, but after the state court ordered the appointment of a receiver for the corporate Defendants, Defendants Parker Medical, Midwest Medical, and Peachtree Medical (the "Debtor Defendants"), filed voluntary chapter 11 petitions on January 14, 2022, initiating the above-captioned jointly administered chapter 11 bankruptcy case and staying the state court case as to the Debtors. Three days after filing the bankruptcy case, Parker Medical removed the state court litigation to this Court, initiating this adversary proceeding. Each of the other Defendants filed a consent to removal. At that point, each Debtor Defendant was a debtor-in-possession, Mr. Parker controlled each of the other Defendants, and Chamberlain, Hrdlicka, White, William & Autrey represented each of the Defendants. The Defendants each filed a demand for jury trial on February 14, 2022, demanding a trial by jury on all issues so triable. In the removal papers, the consents to removal, and the jury demands, the Defendants are very clear that they believe all claims in this case are non-core and that they do not consent to entry of final judgments on non-core matters by this Court or to a jury trial in this Court.

Upon removal, however, Part VII of the Bankruptcy Rules[1] and this Court's local rules govern this adversary proceeding. *See* Bankruptcy Rules 9027(g) and 9029; BLR 1001-1, 2, and 3. Of note, Federal Rules 16 and 26, applicable through Bankruptcy Rules 7016 and 7026, and BLR 7016-1 each governed this adversary proceeding upon removal. BLR 7016-1 provides a specific procedure for parties to follow regarding Rule 26(f) conferences, reports, and scheduling orders, including in removed proceedings. The upshot of BLR 7016-1 is that parties must have a Rule 26(f) conference within 21 days of removal and submit a Rule 26(f) report and proposed scheduling order within 14 days of the 26(f) conference. If the parties fail to submit a report or scheduling order, BLR 7016-1 provides for a default discovery schedule, which provides that discovery concludes within 90 days after the last day to have the 26(f) conference. Here, neither side ever submitted a Rule 26(f) report or scheduling order or requested any extension of discovery, filed any motions to compel, or took any action in this case between February 14, 2022, and the Court-scheduled status conference on October 16, 2022. Pursuant to the default scheduling order under BLR 7016-1, the discovery period expired on or around May 8, 2022 (111 days after the case was removed). Moreover, under the default schedule, the time to file motions for summary judgment expired on or around June 5, 2022, pursuant to BLR 7056-1.

That said, the Court understands this case has had many complicating factors and the parties were not sitting on their hands between February and October of 2022. A lot was happening in the underlying bankruptcy case. The Debtors filed several first day motions and had to deal with everything involved with filing a chapter 11 bankruptcy case. First Citizens filed a motion to convert or appoint a chapter 11 trustee within 30 days of the petition date. The United States

---

[1] All references or citations to a "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure. All references or citations to a "Federal Rule" are to the Federal Rules of Civil Procedure. The Court's local rules are referred to and cited as "BLR."

Trustee filed its own motion to convert or appoint a chapter 11 trustee a short time later. First Citizens filed proofs of claims against each Debtor Defendant in early April, asserting the same claims asserted in this action on the 973 and 063 Notes and attendant guarantees.[2] The parties engaged in discovery on the motions to convert or appoint a chapter 11 trustee, and the Court held two days of evidentiary hearings in the first half of April, which resulted in the appointment of Mark A. Smith as chapter 11 trustee (the "Trustee") of the Debtor Defendants in late April. At that point, Mr. Parker no longer controlled the Debtor Defendants, and neither he nor Chamberlain Hrdlicka had any authority to direct the Debtor Defendants in this litigation. Further, as pointed out by the Trustee in his response to the Jurisdictional Motion, the non-debtor corporate Defendants, i.e., DME and Enterprises, are wholly-owned subsidiaries of one or more of the Debtor Defendants, and the Trustee controls those entities as well. Thus, while discovery was still open under the default scheduling order, Mr. Parker and Chamberlain Hrdlicka lost the authority to direct any Defendant in this litigation other than Mr. Parker. The Trustee needed time to orient himself in the Defendants' businesses, the bankruptcy case, and this adversary proceeding. It is understandable that the other parties were both respecting his need for time and waiting for direction on how best to proceed in this adversary proceeding.

By the time the Court held the status conference in October of 2022, however, the parties had the benefit of several months to get their bearings, and both First Citizens and Mr. Parker previewed their intentions to file the three motions now before the Court. On the last day of October, Chamberlain Hrdlicka filed the Jurisdictional Motion on behalf of Mr. Parker and the two non-debtor corporate Defendants (DME and Enterprises). The Jurisdictional Motion requests that the Court 1) determine whether the non-debtor Defendants have a right to jury trial on their

---

[2] First Citizens also asserts claims on an SBA PPP Loan that does not appear to be at issue in this litigation.

defenses and counterclaims, 2) determine whether the claims and defenses in this adversary proceeding are core or non-core, and 3) enter a report and recommendation to the district court to withdraw the reference of this adversary proceeding in full, immediately.  In response to the Jurisdictional Motion, the Trustee points out that he controls both DME and Enterprises and that he has not retained Chamberlain Hrdlicka to represent him or any of the corporate Defendants. The Trustee requests that the Court construe the Jurisdictional Motion to be filed on behalf of Mr. Parker only.  Chamberlain Hrdlicka filed a reply in support of the Jurisdictional Motion, again on behalf of Mr. Parker and the two non-debtor corporate Defendants, and states in a footnote that the Trustee's response was the first time they were made aware of the issue and that no one had entered a notice of appearance on behalf of DME or Enterprises or requested Chamberlain Hrdlicka's withdrawal.  To that point, although the Trustee entered a notice of appearance in the adversary proceeding in August of 2022 on behalf of himself, nothing in that notice of appearance specifies which Defendants the Trustee asserts control over or requests that Chamberlain Hrdlicka withdraw from representation of any Defendant, and the Court's docket still shows Chamberlain Hrdlicka as counsel of record for every Defendant.

After the Trustee raised these issues in response to the Jurisdictional Motion, First Citizens filed its Motion for Summary Judgment, requesting summary judgment on all claims and counterclaims at issue in this adversary proceeding.  In response to the Motion for Summary Judgment, Chamberlain Hrdlicka first filed the Motion to Defer, which requests that the Court defer ruling on, or deny, the Motion for Summary Judgment either 1) pursuant to Federal Rule 56(d), applicable through Bankruptcy Rule 7056, to allow the non-Debtor Defendants to conduct additional discovery, or 2) after the Court rules on the Jurisdictional Motion.  Chamberlain Hrdlicka also filed a preliminary response in opposition to the Motion for Summary Judgment.

Both the Motion to Defer and response to the Motion for Summary Judgment are purported to be filed on behalf of DME and Enterprises in addition to Mr. Parker. The Trustee has not filed any responses to those pleadings or requested those pleadings be construed as being filed on behalf of Mr. Parker only. Chamberlain Hrdlicka, however, has not suggested that the Trustee does not control DME or Enterprises or that it has been retained by the Trustee for any purpose. The Court, therefore, concludes that Chamberlain Hrdlicka does not have authority to represent DME or Enterprises unless the Trustee retains them for that purpose, and the Court considers the Jurisdictional Motion, the Motion to Defer, the response to the Motion for Summary, and any other supporting papers filed by Chamberlain Hrdlicka to be on behalf of Mr. Parker only.

With this background in mind, the Court turns to the motions before it, beginning with the Jurisdictional Motion.

## I.   The Jurisdictional Motion

In the Jurisdictional Motion, Mr. Parker[3] requests three distinct forms of relief. First, he requests that the Court determine he has a right to a jury trial on his affirmative defenses and counterclaims against First Citizens. Second, he requests the Court determine that his affirmative defenses and counterclaims are non-core. Third, he requests that the Court enter a report and recommendation to the district court that the reference in this case be withdrawn in full, immediately. First Citizens disputes that any of the claims, defenses, or counterclaims asserted in this adversary proceeding are non-core other than Mr. Parker's affirmative defenses and counterclaims. It further disputes that any party other than Mr. Parker has a right to a jury trial, but that the question of a jury trial, ultimately, is not relevant because it believes it will win on all

---

[3] As discussed above, the Court considers the Jurisdictional Motion to be filed by Mr. Parker only, and any requests for relief will be considered only as to Mr. Parker, except the Court will determine whether all claims and counterclaims are core or non-core. *See* 28 U.S.C. § 157(b)(3).

claims at summary judgment, and that any non-core claims will be submitted to the district court for entry of final order without the need for a jury trial.  First Citizens also opposes withdrawal of the reference.  The Trustee takes no position regarding the nature of Mr. Parker's claims and defenses or whether he has a right to a jury trial, but the Trustee casts doubt on the Debtor Defendants' right to a jury trial on their counterclaims.  The Trustee further requests the Court determine whether each claim in this case is core or non-core, but he disputes Mr. Parker's contention that the claims and counterclaims between First Citizens, the Debtors, and the non-debtor corporate Defendants are non-core.   The Trustee also requests the reference not be withdrawn at this time, but that the procedure outlined in BLR 9015-3 be followed.

The Court has jurisdiction to determine the Jurisdictional Motion pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(3).  Mr. Parker states that the Court does not have constitutional authority to enter a final order regarding the Jurisdictional Motion itself because the matters contained in the Jurisdictional Motion are non-core proceedings.  The statement begs at least two questions.  First, it assumes that all matters in this adversary proceeding are non-core, but "[i]t is the bankruptcy court's responsibility to determine whether each claim before it is core or non-core." *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 33 (2014); 28 U.S.C. § 157(b)(3).  Mr. Parker offers no authority suggesting the Court must submit proposed findings and conclusions on the initial determination of whether a proceeding is core.[4]  Second, it assumes resolution of the Jurisdictional Motion requires the entry of final orders.  "[I]t is now very well established that bankruptcy courts consistent with Stern v. Marshall may handle all pretrial proceedings short of a

---

[4] The only authority cited to support Mr. Parker's contention is *Stern v. Marshall*, which addressed only the constitutional authority of bankruptcy courts to enter final judgments on certain types of proceedings that are statutorily core.  *Stern v. Marshall*, 564 U.S. 462, 503 (2011) ("The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim.").

final ruling—including entry of interlocutory orders dismissing fewer than all of the claims in an adversary complaint, granting partial summary judgment, or making discovery and evidentiary rulings—without the need to issue proposed findings of fact and conclusions of law and invocation of Fed. R. Bankr. P. 9033." *Windstream Holdings, Inc. v. Charter Comms., Inc. (In re Windstream Holdings, Inc.)*, Case No. 19-22312 (RDD), 2020 WL 833809 *2 (Bankr. S.D.N.Y. Feb. 19, 2020) (citing cases).  Nothing in the Jurisdictional Motion requires a final judgment or determination of any claim in this adversary proceeding, core or non-core, and the matters raised in the Jurisdictional Motion are interlocutory in nature.  *See City of Morgantown, W. Va. v. Royal Ins. Co.*, 337 U.S. 254, 256 (1946) (order determining right to jury trial is interlocutory); *In re Hooker Investments, Inc.*, 937 F.2d 833, 837 (2nd Cir. 1991) ("In addition, a determination that a litigant is or is not entitled to a jury trial generally is not itself immediately appealable as a final order because it merely prescribes the method of fact-finding to be applied to the underlying dispute; it obviously does not dispose of the dispute.").  The Court finds it has authority to issue orders on the matters requested in the Jurisdictional Motion without submitting proposed findings of fact and conclusions of law to the district court.[5]

A.    **Right to a Jury Trial**

Mr. Parker requests that the Court find he has a right to a jury trial on his defenses and counterclaims.  The Court easily concludes that he does.  The Seventh Amendment provides, "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ."  U.S. CONST. amend. VII.  The claims against Mr. Parker and his counterclaims are monetary claims for breach of contract or tort.  The amount in controversy

---

[5] As discussed below, the Court has no authority to withdraw the reference, as that power resides exclusively with the district court, but the Court has authority to determine whether it will issue a report and recommendation to withdraw the reference.

exceeds $20. Mr. Parker appears to have properly preserved his right to a jury trial pursuant to

Federal Rule 38, made applicable by Bankruptcy Rule 9015. *See also* Federal Rule 81(c)(3)(A),

applicable through Bankruptcy Rule 9015 (providing that in removed cases a party need not renew

a demand for jury trial if expressly demanded according to state law prior to removal). Neither

First Citizens nor the Trustee offer any argument that Mr. Parker does not have a right to a jury

trial on his defenses and counterclaims.

To the extent the Jurisdictional Motion requests the Court to determine that any other

Defendant has a right to a jury trial, the Court concludes that such a request is not properly before

the Court because the Trustee is the proper party to bring such a request, and he has not done so.

Indeed, the Trustee casts doubt on whether the Debtors have a right to a jury trial on their defenses

and counterclaims, but he does not request the Court make any determination at this time, and the

Court does not believe the parties have adequately addressed the issue of whether the Trustee or

any Defendants other than Mr. Parker have retained a right to a jury trial in this case. [6] The Court

denies any request to determine whether any Defendant other than Mr. Parker has a right to a jury

trial without prejudice.

**B. <u>Determination of Core/Non-Core Status</u>**

Turning to the question of whether this proceeding is core or non-core, the Court applies a

claim-by-claim analysis to determine the extent of its jurisdiction. *See, e.g., Halper v. Halper*, 164

---

[6] The Court is not ruling that other Defendants do not have a right to jury trial, only that the issue is not properly before the Court on the Jurisdictional Motion. Among unaddressed issues is whether the Trustee has adequately preserved his right to a jury trial. In his Notice of Appearance in this case (Doc. No. 14), the Trustee stated that he was not waiving the right to a jury trial in any proceeding so triable in this case, but BLR 9015-1 provides, "The failure of a party to serve and file a demand as required by this rule constitutes a waiver by the party of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without consent of all the parties to the proceeding to be tried and leave of the District Court or Bankruptcy Court as appropriate." Although all Defendants now controlled by the Trustee filed a jury demand while they were still debtors in possession or controlled by Mr. Parker, no party addresses in their papers whether the Trustee must file a separate jury demand to preserve his right to a jury trial. Further, the Court is not ruling on whether claims or defenses of Defendants other than Mr. Parker should be tried separately from Mr. Parker's claims and defenses if any Defendant does not have a right to a jury trial, because the parties have not adequately raised or addressed that issue in their papers.

F.3d 830, 838-40 (3d Cir. 1999) (but citing to cases finding that entire adversary proceeding can be core if core issues predominate).  If a specific claim is core, then the Court has authority to determine such claim by final judgment.  If a claim is not core but related to the bankruptcy case, then the Court has jurisdiction to hear such matters and enter non-final orders, but it does not have authority to determine such matters by final order or judgment.  The Court may, however, submit proposed findings and conclusions on non-core matters to the district court for final orders and judgment.  *See* 28 U.S.C. § 157(b) and (c).  Only if a claim has no relation to the Debtor Defendants' bankruptcy case would the Court have no jurisdiction to hear such claim, but no party disputes that every claim at issue in this case is, at a minimum, related to the Debtor Defendants' bankruptcy cases, and the Court concurs.  At the heart of this case is whether and how much Debtors and their affiliates and principal owe First Citizens (or how much First Citizens owes them) and each Defendants' respective liability (or right to damages) affects the Debtors' respective estates.  Thus, the Court easily concludes it has jurisdiction to hear all claims in this adversary proceeding pursuant to 28 U.S.C. § 1334.

The Court first addresses the claims against Mr. Parker and his counterclaims and concludes they are not core.  The claims between First Citizens and Mr. Parker exist independently of the Bankruptcy Code, arise entirely under state law, and do not directly implicate any of the core matters listed in 11 U.S.C. § 157(b)(2).  Although Mr. Parker's counterclaims and defenses involve many of the same facts and issues as the other claims before the Court, at bottom the claims against Mr. Parker are guaranty claims, and the Court does not believe a guaranty claim against a debtor's principal, or a principal's state law counterclaims, fall under its core jurisdiction.  Neither First Citizens nor the Trustee dispute that the claims against Mr. Parker and his counterclaims and defenses are non-core.  The Court concludes it does not have authority to enter final orders or

judgments on the claims against Mr. Parker or his counterclaims but may submit proposed findings and conclusions to the district court.

The Court next addresses First Citizens' claims against the Debtor Defendants, and the Debtor Defendants' affirmative defenses, and determines they are core.  First Citizens has filed proofs of claim against each Debtor asserting the exact same claims asserted in this adversary proceeding, and the filing of such proofs of claim initiated the claims allowance process. Allowance and disallowance of claims against a debtor are core matters under § 157(b)(2)(B). Indeed, "[n]othing is more directly at the core of bankruptcy administration . . . than the quantification of all liabilities of the debtor . . . ." *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 705 (2nd Cir. 1995) (citing *In re BKW Sys., Inc.,* 66 B.R. 546, 548 (Bankr. D.N.H. 1986)). The fact that the claims are based on state law and are the subject of pre-petition litigation does not negate the core nature of the claims allowance process.  *In re S.G. Phillips*, 45 F.3d at 705. Nor does the Court find it relevant that the claims allowance process in this case is being pursued through an adversary proceeding removed from state court.   Ample authority supports the proposition that a creditor's proof of claim transforms non-core state law claims against a debtor into a core matter, even in the context of removed state law proceedings.  *See L. Ardan Dev. Corp. v. Touhey (In re Newell)*, 424 B.R. 740, 734-35 (Bankr. E.D.N.C. 2010) (creditor's claims, and debtor's affirmative defenses, asserted in pre-petition state court proceeding removed to bankruptcy court were core following filing of proofs of claims by creditor); *Steinman v. Spencer (In re Argus Group 1700, Inc.)*, 206 B.R. 737, 747-48 (Bankr. E.D. Pa. 1996) (filing of proof of claim which asserts same claims raised against debtor in prepetition state court action transforms state court action into core proceeding); *In re Best Reception Sys., Inc.*, 220 B.R. 932, 944 (Bankr. E.D. Tenn. 1998) ("Where a party has filed a proof of claim in a debtor's case, any action asserted

by that party against the debtor that raises the same issues as those encompassed by the proof of claim is a core proceeding under . . . § 157(b)(2)(B)"); *see also Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid–Atlantic Handling Sys., LLC)*, 304 B.R. 111, 123 (Bankr. D.N.J. 2003) (citing cases).

How to categorize the Debtor Defendants' counterclaims is a tougher call. It is clear the counterclaims are statutorily core under § 157(b)(2)(C), but the question is whether they fall under the category of claims described in *Stern v. Marshall*, 564 U.S. 462 (2011), which are commonly referred to as "Stern" claims. A Stern claim is a counterclaim asserted by a debtor against a creditor filing a proof of claim, which therefore falls under the statutory definition of core, but for which bankruptcy court's lack constitutional authority to enter final judgments because the "claim is a state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy." *Stern,* 564 U.S. at 487. "[T]he question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Id.* at 499. The Court has considered *Stern v. Marshall*, *Apache Corp. v. Castex Offshore, Inc. (In re Castex Energy Partners, LP)*, 584 B.R. 150 (Bankr. S.D. Tex. 2018) cited by Mr. Parker, and the claims and counterclaims at issue here, and finds the counterclaims here will necessarily be resolved in the claims allowance process. The Court cannot determine whether First Citizens has a valid breach of contract claim without determining whether the Debtor Defendants' counterclaims have merit, and vice versa, because the central issue to both claims is whether the 973 Note matured on May 25, 2021, or whether there was an agreement or representation to extend the maturity date to September 2021. Accordingly, the Debtor Defendants' counterclaims are core, and the Court has authority to enter final orders and judgment on them.

That leaves the final bucket of claims at issue: First Citizens' claims against the non-debtor corporate Defendants. The non-debtor corporate Defendants have not asserted any counterclaims, so the only question is whether a contractual breach of a guaranty claim against a non-debtor is core simply because the non-debtor is a subsidiary of a debtor. Both Trustee and First Citizens argue these claims are core, but they cite no significant authority and develop no significant argument to support their contention. The Court concludes these claims are not core, as they are based solely on state law and do not directly involve the claims allowance process. Thus, the Court finds it does not have authority to determine the claims against the non-debtor corporate Defendants by final judgment in the absence of consent. *See* 28 U.S.C. § 157(c) (allowing bankruptcy court to determine non-core proceedings with consent of parties); *see also Wellness Int'l Network, LTD v. Sharif*, 575 U.S. 665, 671, 686 (2015) ("Article III permits bankruptcy courts to decide *Stern* claims submitted to them by consent").

In sum, First Citizens' claims against Mr. Parker, DME, and Enterprises, their respective defenses, and Mr. Parker's counterclaims are not core, and the Court does not have authority to enter final orders or judgment on such claims, but it may enter proposed findings and conclusions to be submitted to the district court for final order or judgment. First Citizens' claims against the Debtors and their respective counterclaims against First Citizens are core proceedings, and the Court has authority to enter final orders and judgment on such claims.

### C. Withdrawal of the Reference

The Court next considers Mr. Parker's request to enter a report and recommendation to withdraw the reference for this entire proceeding immediately to the district court. The Court declines to do so. Pursuant to 28 U.S.C. § 157(d) and Bankruptcy Rule 5011(a), only the district court has authority to hear and determine whether to withdraw the reference, whether in whole or

in part.  Although BLR 5011-1 gives a bankruptcy judge the ability to request withdrawal of the reference at any time *sua sponte*, the Court is not aware of any rule or procedure that requires a bankruptcy court to make such a request on motion of a party, and any request by this Court would no doubt be reviewed *de novo* by the district court.  For those reasons, this Court's local rules require that any motion by a party requesting withdrawal of the reference "must clearly and conspicuously state 'RELIEF IS SOUGHT FROM A UNITED STATES DISTRICT JUDGE,' and should refer to and comply with 28 U.S.C. § 157(d) and Bankruptcy Rule 5011(a)."  The Jurisdictional Motion makes no such statement, and it is not clear why Mr. Parker chose to bypass the normal procedure of requesting withdrawal of the reference directly to the district court.

As for compliance with 28 U.S.C. § 157(d), that statute requires a motion to withdraw the reference be "timely."  Although neither the statute nor the Bankruptcy Rules create any specific time to file a motion to withdraw the reference or provide any guidance about the meaning of "timely," courts define timely to mean "as soon as possible after the moving party is aware of grounds for withdrawal of reference" or "at the first reasonable opportunity after the moving party is aware of grounds for withdrawal of reference."  *In re Mahlmann,* 149 B.R. 866, 869 (N.D. Ill. 1993) (citing *In re Sevko, Inc.,* 143 B.R. 114 (N.D. Ill. 1992)).  The local rules for this Court require motions to withdraw the reference in adversary proceedings "be served and filed not later than the time for answering or otherwise responding to the pleading or paper in which the ground for the motion to withdraw the reference first arises."  BLR 5011-2.  Mr. Parker's stated grounds for withdrawal of the reference—primarily, that this adversary proceeding is non-core and that the Defendants preserved their right to jury trial—existed on January 17, 2022, the date Parker Medical removed this litigation to this Court with the consent of each Defendant.  At the latest, all the grounds supporting Mr. Parker's request existed when he and the other Defendants filed their

jury demands on February 14, 2022, in which they again repeated that the claims were non-core and demanded jury trials on all triable issues and did not consent to such trial being held in this Court.  Although it is not clear which pleading or paper would have required a response or answer to trigger the time limit under the local rule, eight and a half months elapsed between the jury demand and the Jurisdictional Motion without a single substantive paper filed in this adversary proceeding by any party.  The only real change that occurred was the appointment of the Trustee in the main bankruptcy case, a decidedly undesirable ruling for Mr. Parker from this Court, but even that occurred in April, more than six months before the Jurisdictional Motion.[7]  Even considering the issues and complications in the underlying bankruptcy case discussed above in the background section, Mr. Parker's request to withdraw the reference is not timely given that the circumstances supporting his request for withdrawal all existed at the time he and the other Defendants voluntarily removed this litigation to this Court more than eight months before filing the Jurisdictional Motion.

Further, the cause argued by Mr. Parker to withdraw the reference primarily relies on arguments that it would waste judicial resources to have this Court handle pre-trial matters or enter findings and conclusions on non-core matters that will likely end in a jury trial in the district court. The Court disagrees.  Although there are non-core matters in this litigation, the primary factual and legal issue in this case is whether a chapter 11 debtor failed to pay its primary lender on a promissory note at maturity, or whether the maturity date was extended by the bank.  The Court has difficulty imagining a more core function of a bankruptcy court than determining whether a

---

[7] The timing of the request, following the Court's appointment of the Trustee in the main bankruptcy case, raises the question of whether forum shopping is the real motivation for seeking withdrawal of the reference.  After all, the initiation of the underlying bankruptcy cases on the heels of an unfavorable ruling from the state court relative to the appointment of a receiver for the Debtors raised similar forum shopping concerns for the Court when it considered whether appointment of a trustee was appropriate.

debtor owes a lender money on a promissory note. Moreover, the issues argued by Mr. Parker are not uncommon in adversary proceedings filed or removed to bankruptcy court. 28 U.S.C. § 157, the Bankruptcy Rules, and the Court's Local Rules have long-standing procedures to deal with cases involving a mix of core and non-core proceedings and to deal with cases that must be tried by jury in the district court. As the Trustee points out, BLR 9015-3 specifically provides that this Court will handle all pre-trial matters, including summary judgment motions, as provided by law, and then transfer the case to the district court when it is ready for trial. The Court sees no reason this procedure should not apply to this case.

Having concluded that this court has jurisdiction to hear all claims in this adversary proceeding and that it will not request the reference to be withdrawn prior to trial, the Court turns to the Motion for Summary Judgment and Motion to Defer.

## II.    <u>The Motion for Summary Judgment and Motion to Defer</u>

First Citizens moves for summary judgment on all of its breach of contract claims and all of the Defendants' counterclaims. It argues, primarily, that the 973 Note matured on May 25, 2021, and the plain language of the 973 Note and related documents defeats any arguments or evidence Mr. Parker and the other Defendants may have that First Citizens agreed or misrepresented that it would extend the maturity date of the 973 Note. Both the Trustee and Mr. Parker oppose summary judgment, arguing the loan documents do not preclude the Defendants' contention that First Citizens agreed or represented to extend the maturity date, that issue of fact is very much disputed, and that factual determination is a threshold issue for every claim and counterclaim in this case.

Mr. Parker also responded by filing the Motion to Defer, requesting that the Court either deny, or defer ruling on, the Motion for Summary Judgment pursuant to Federal Rule 56(d),

applicable through Bankruptcy Rule 7056, to allow Mr. Parker and the other parties to conduct

additional discovery.[8]  First Citizens opposes the Motion to Defer.  The Trustee filed no response

to the Motion to Defer, and the Court considers the Trustee to have no opposition to the Motion to

Defer.  BLR 7007-(c).

    After carefully considering the Motion for Summary Judgment, the responses thereto, the

various statements of facts and counterstatements filed by the parties, the evidence filed in

connection with the foregoing, the Motion to Defer, and the response to the Motion to Defer, the

Court will grant the Motion to Defer in part and deny the Motion for Summary Judgment without

prejudice for the reasons discussed below.

## A.  Analysis

Federal Rule 56(d) provides,

> (d) *When Facts Are Unavailable to the Nonmovant*. If a nonmovant shows
> by affidavit or declaration that, for specified reasons, it cannot present facts
> essential to justify its opposition, the court may:
>
>> (1) defer considering the motion or deny it;
>>
>> (2) allow time to obtain affidavits or declarations or to take discovery; or
>>
>> (3) issue any other appropriate order.

Although a "district court is not required to await the completion of discovery before ruling on a

motion for summary judgment . . . [b]efore entering summary judgment the district court must

ensure that the parties have an adequate opportunity for discovery." *Fla. Power & Light v. Allis*

*Chalmers, Corp.*, 893 F.2d 1313, 1316 (11th Cir. 1990) (citing *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986)).  "It is clear that [a party] cannot 'rest on vague assertions that additional

discovery will produce needed, but unspecified facts,' but rather must specifically demonstrate

---

[8] The Motion to Defer also requests the Court abstain from ruling on the Motion for Summary Judgment pending its ruling on the Jurisdictional Motion.  That portion of the Motion to Defer is moot given the Court's ruling on the Jurisdictional Motion.

'how postponement of a ruling on the motion will enable [them], by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" *Fla. Power & Light*, 893 F.2d at 1316 (quoting *Wallace v. Brownell Pontiac–GMC Co., Inc.,* 703 F.2d 525, 507 (11th Cir. 1983)).  "A Rule 56[d] motion must be supported by an affidavit which sets forth with particularity the facts the moving party expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment." *Harbert Intern., Inc. v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998).  To satisfy Rule 56(d), a party must specify (1) what particular facts it seeks; (2) from whom it might seek them; and (3) how it would use them to rebut the arguments in support of summary judgment. *Nawab v. Unifund CCR Partners*, 553 F. App'x 856, 859 (11th Cir. 2013). In any case involving Rule 56(d), the district court must "balance the movant's demonstrated need for discovery against the burden such discovery will place on the opposing party." *Garner v. City of Ozark*, 587 F. App'x 515, 518 (11th Cir. 2014) (citation omitted).  "If the court is satisfied with the nonmovant's explanations, the court may deny the [summary judgment] motion without prejudice or may simply order a continuance." *Fla. Power & Light*, 893 F.2d at 1316 (quoting *Wallace v. Brownell*, 703 F.2d at 507).

At the heart of this case is whether First Citizens agreed or represented that it would extend the 973 Note to September of 2021.  All of First-Citizen's claims, at least as presented in the Motion for Summary Judgment, hinge on its position that Parker Medical defaulted on the 973 Note by failing to pay it in full upon maturity on May 25, 2021, which caused a cross-default on the 063 Line and defaults on the various guarantees of the 973 and 063 Lines.  All of the Defendants' defenses and counterclaims hinge on their position that First Citizens represented to Mr. Parker that the maturity date would be extended to September of 2021 and that the failure to do so was either a breach of contract or tortious.

Mr. Parker points to five sub-categories of a document request served on First Citizens that he asserts remain outstanding, at least in part, and are relevant to the central factual dispute in this case and essential to Mr. Parker's counterclaims and defenses and therefore his opposition to the Motion for Summary Judgment.  Specifically, the Defendants requested written communications among First Citizens employees in the following categories:

- The Purported 973 Note, Commercial Security Agreements, Purported 063 Note, Business/Commercial Loan Agreement, Master Agreement, Supplemental Agreement, Purported Guaranties of the 973 Note, and/or Purported Guaranties of the 063 Note, including but not limited to the loan file, minutes of meetings, internal and external memoranda, internal and external correspondence, and text messages;

- Decisions or discussions in any way related to modifications, renewals, and/or extensions concerning the Purported 973 Note, Commercial Security Agreements, Purported 063 Note, Business/Commercial Loan Agreement, Master Agreement, and/or Supplemental Agreement;

- The decision of Plaintiff First-Citizens not to renew or extend the Purported 973 Note, Commercial Security Agreements, Purported 063 Note, Business/Commercial Loan Agreement, Master Agreement, Supplemental Agreement;

- All facts evidencing any attempt by Plaintiff First-Citizens to mitigate damages; and

- The authority or limit on authority of any of Plaintiff First-Citizens' employee[s] to act on behalf of Plaintiff First-Citizens in any way pertaining or relating to the Purported 973 Note, Commercial Security Agreements, Purported 063 Note, Business/Commercial Loan Agreement, Master Agreement, Supplemental Agreement.

*See* Declaration of Drew V. Greene ("Greene Dec."), Ex. 5.  This request appears to have been made at least twice—once in the state court before removal, and once in connection with the motions to convert or appoint a chapter 11 trustee filed in the underlying bankruptcy case. First Citizens raised various objections to the document requests and maintains in its response to the Motion to Defer that the requested documents are not relevant to this litigation because any evidence of any parol agreements or course of conduct is prohibited by the loan documents.  First Citizens, however, produced some documents in response.  Mr. Parker asserts that the documents produced do not include documents after March 30, 2021, which leaves a gap in information during

a critical time for the issues in this case.  Greene Dec., ¶ 11.  The time between March 30 and April 7, 2021, is of critical importance, Mr. Parker argues, because before March 30, Mr. Parker believes First Citizens intended to extend the 973 Note and made representations to him that the 973 Note would be extended.  But, without warning, on April 7, First Citizens made an about-face and informed Mr. Parker that the bank would be terminating the relationship.

Mr. Parker maintains that Larry "Skip" McPheeters repeatedly represented to him that the 973 Note would be extended to September of 2021, which culminated in an email from Mr. McPheeters to Mr. Parker on March 29, 2021.  The contents of this email are not in dispute, but its meaning is very much disputed.  Regardless of whose reading of the email is correct, what is clear is that its meaning cannot be determined in a vacuum.  As First Citizens argues in the Motion for Summary Judgment, "the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement, and courts are free to consider such extrinsic evidence."  *Hart v. Hart*, 297 Ga. 709, 711 (2015).   In its Motion for Summary Judgment, First Citizens relies on both prior and subsequent communications between the bank and Mr. Parker to support its preferred reading of the email and establish course of conduct.  First Citizens includes in its evidence in this case an April 7 email between Jeff Higginbotham and several bank employees discussing the phone call between Mr. Higginbotham, Mr. McPheeters, and Mr. Parker that same day.[9]  If First Citizens finds its own communications around the critical time period to be relevant, it cannot legitimately argue they are not relevant for Mr. Parker and the other Defendants.  Further, the email shows

---

[9] The Affidavit of Larry "Skip" McPheeters, Doc. No. 1-16, which is cited by First Citizens in its statement of facts in support of its Motion for Summary Judgment, states that "any review of these communications illustrate[s] that the course of dealings discussed therein conflicts with the (misrepresentations) made in Parker's Affidavit."  At ¶ 8.  The referenced communications are attached as Exhibit A and include an email from Mr. Higginbotham to Leigh Mays, Mindie Walker, and Ron Sanchez, explaining in brief the substance of the phone call with Mr. Parker that same day.

there likely are internal communications about the substance of representations made by bank representatives to Mr. Parker around the March 30 to April 7 time period, and it is not fair to allow First Citizens to pick and choose which of those communications it shows and which it does not.

Moreover, some of the internal communications and documents already produced support Mr. Parker's position that bank employees, at a minimum, believed the 973 Note was "likely" to be extended to September in the weeks leading up to April 7.  Specifically, a document titled "BOSS Transaction Info Sheet" produced by First Citizens at some point contains internal bank notes by two employees, Leigh Mays and Mindie Walker, related to Parker Medical.  *See* Declaration of Larry "Skip" McPheeters in Support of Motion for Summary Judgment, Doc. No. 21-4, ¶ 6, Ex. C.  Much of this "BOSS" document is inscrutable, but it contains one note stating, "recommend approve installation of a $750M LOC to support existing P-Card. . . .  we have matched the maturity to this facility to the likely maturity date of the capital manager – at that time we will consider consolidating the 2 facilities."  This document shows there may be other internal bank communications that employees believed the 973 Line would likely be extended to September.  Any such communications are relevant.

First Citizens, although arguing it has produced some documents responsive to the requests, does not specifically dispute that it did not produce documents of internal communications between March 30 and April 7, 2021.  Instead, First Citizens' main argument in response to the Motion to Defer mirrors its primary argument in the Motion for Summary Judgment—that the discovery requests are irrelevant because Defendants cannot dispute the maturity date of May 25, 2021, as any evidence of alleged representations of an extension are impermissible parol evidence excluded by the loan documents.[10]

---

[10] First Citizens also states any requests for internal bank communications are otherwise objectionable, citing to O.C.G.A. § 10-1-761, which deals with trade secrets.  The Court expresses no ruling or opinion on any objections to

First Citizens relies heavily throughout its Motion for Summary Judgment and again in the

Motion to Defer on the so-called merger clause found in the Supplemental Loan Agreement for

Revolving Line of Credit (the "Supplemental Agreement"):

> The Note, the Master Agreement, this Agreement, and the other Related
> Documents constitute the entire understanding and agreement of the parties
> as to the matters set forth in this Agreement.  No alteration of or amendment
> to this Agreement shall be effective unless given in writing and signed by
> the party or parties sought to be charged or bound by the alteration or
> amendment.

Declaration of Jeffrey Shornock in Support of the Motion for Summary Judgment ("Shornock

Dec."), Ex. B-2, p.13.  Upon a close reading of this language and the various contracts, it is clear

this provision does not apply to the issues in this case.

When broken down, the cited provision constitutes two distinct provisions, with two

distinct purposes.  The first sentence is as a traditional merger clause:

> The purpose of a merger clause is to preclude any unilateral modifications
> of a written contract through evidence of *pre-existing* terms that were not
> incorporated into the written contract.  Where parties have reduced to
> writing a complete and certain agreement, the court will, in the absence of
> fraud, mistake, or accident, conclusively presume that the writing contains
> the entire contract, and parol evidence of *prior or contemporaneous*
> *representations or statements* is inadmissible to add to . . . a written contract.

*Rome Healthcare LLC v. Peach Healthcare System, Inc.,* 264 Ga. App. 265, 271-72 (2003)

(emphasis added).  As this authority makes clear, and both the Trustee and Mr. Parker correctly

point out, a merger clause deals only with parol evidence relating to statements or representations

made contemporaneously with, or prior to, the execution of a contract.  The issues here all relate

to representations and conduct occurring years after the execution of the 973 Note and related

documents.  Thus, the merger clause is not relevant to the issues before the Court and does not

---

discovery that First Citizens might assert to the document requests at issue on grounds that the information constitutes
trade secrets or proprietary information, and the parties' rights on that issue are preserved.

preclude the Defendants' counterclaims or defenses.  The cases cited by First Citizens regarding "future acts by a bank officer" deal with oral agreements made at or before execution of the documents and have no bearing on the case here involving an alleged subsequent agreement.[11]

The second sentence is not a merger clause dealing with prior conduct.  Instead, it is a provision designed to require future modifications to be signed in writing.  This "signed-modification clause" might be more relevant to the issues in this case if it applied to the 973 Note and the Capital Manager Agreement, but it does not.  The plain terms of the signed-modification clause indicate that it applies to "this Agreement," which is defined as the Supplemental Agreement only.  *See* Shornock Dec., Ex. B-2, pp. 1, 15.  In contrast, the merger clause explicitly includes references to the "Note" and the "Master Agreement," which are the 973 Note and Capital Manager Agreement.  *Id.*  The loan provisions governing extension of the 973 Note appear in the 973 Note and the Capital Manager Agreement, not the Supplemental Agreement.  *See* Shornock Dec., Ex. A and B-1, ¶ 21.  Therefore, the "signed-modification clause" in the Supplemental Agreement does not govern any extension of the maturity date, and neither the 973 Note nor the Capital Manager Agreement have a similar provision requiring modifications to be signed.[12]

Under Georgia law, which governs the loan documents, "the terms of a written contract may be modified or changed by a subsequent parol agreement between the parties, where such agreement is founded on sufficient consideration.  Such parol agreements between parties can be

---

[11] The cases cited by First Citizens are *Weintraub v. Cobb Bank & Trust Co.*, 249 Ga. 148, 149 (1982); *Craft v. Drake*, 244 Ga. 406, 407 (1979); *First National Bank & Trust Co. in Macon v. Thompson,* 240 Ga. 494, 494 (1978); *Bentley v. National Bank of Walton County*, 175 Ga. App. 732, 733 (1985); *Citizens Trust Bank v. Tyler,* 162 Ga. App. 589, 589 (1982); *Rogers v. C. & S. Nat. Bank*, 156 Ga. App. 330, 330 (1980); and *Rambo v. Cobb Bank & Trust Co.*, 146 Ga. App. 204, 205 (1978).

[12] The Capital Manager Agreement contains provisions allowing First Citizens to modify the terms of the Capital Manager Agreement and a customer's account without consent of the customer at any time.  *See* Shornock Dec., Ex. B-1, ¶ 24.B.  If the signed-modification clause of the Supplemental Agreement were applicable to the Capital Manager Agreement and 973 Note, the contracts would be in direct conflict with one another.

evidenced either through the parties' course of conduct or through oral modifications." *Hanham v. Access Mgmt. Group L.P.*, 305 Ga. 414, 417, 825 S.E.2d 217 (2019) (cleaned up).  Further, "the parties' subsequent course of conduct can also operate to waive an otherwise validly enforceable written requirement that all modifications be in writing. *Id.* at n.2 (citing *Gerdes v. Russell Rowe Communications*, Inc., 232 Ga. App. 534, 536 (1), 502 S.E.2d 352 (1998); *American Car Rentals, Inc. v. Walden Leasing, Inc.*, 220 Ga. App. 314, 316 (1), 469 S.E.2d 431 (1996).  There is no provision requiring that a modification to the 973 Note and Capital Manager Agreement be in a writing signed by the parties, and parol agreements, evidenced through course of conduct or oral modifications, can modify those agreements, including the provisions governing extensions of maturity.  Further, even if the signed-modification clause found in the Supplemental Agreement applied to the 973 Note and the Capital Manager Agreement, that provision could be waived through course of conduct under Georgia law.  Thus, the Court does not agree with First Citizens' contention that the terms of the loan documents preclude evidence of oral agreements or course of conduct.

The Court is satisfied that Mr. Parker has identified the particular facts he seeks through the limited additional discovery of written bank communications responsive to the five sub-categories identified above for the limited time period of March 30, 2021 to April 7, 2021, and the depositions of Leigh Mays and Mindie Walker.  The Court is also satisfied that Mr. Parker has established how such facts will be used to rebut the Motion for Summary Judgment.  The Court also concludes that the Motion to Defer was filed within a reasonable time after the Motion for Summary Judgment and is therefore timely.  The Court finally concludes that Mr. Parker's (and the other Defendants') need for the additional discovery outweighs any burden on First Citizens.

One issue the Court does take with the Motion to Defer is its insistence that no scheduling order has ever applied to this case or the implication that discovery remains open.  As discussed above, the local rules imposed a default discovery schedule, and the discovery period closed months ago.  That said, there have been many complicating factors in this case, and the Court does not believe that Mr. Parker or the other Defendants' failure to complete the requested discovery was due to lack of diligence or negligence on their part.  Although the Court does not agree that discovery is open at this time, the Court will reopen discovery for a limited period of 60 days solely for the purpose of completing the following discovery:  1) production of documents responsive to the five sub-categories listed above for the time period between March 30, 2021 and April 7, 2021, subject to any valid objections of First Citizens; and 2) depositions of Leigh Mays and Mindie Walker after production of all responsive documents.  Any party, including First Citizens, may file a motion for summary judgment within 30 days after the limited discovery period ends.  Discovery is not being reopened for any other purpose at this time.  If the parties believe any further discovery is necessary in this case, they must file a separate motion requesting such relief.

The Court will enter separate orders consistent with this opinion.

<u>END OF DOCUMENT</u>